UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREATER NEW YORK MUTUAL INSURANCE COMPANY<br><br>        Plaintiff,<br><br>v.<br><br>ROBBINS EYE CENTER P.C.,<br>KIM P. ROBBINS M.D.,<br>COMMERCE PARK ASSOCIATES, LLC, and<br>RDR MANAGEMENT, LLC<br><br>        Defendants | No. 3:19-cv-01741 (MPS) |

**RULING ON MOTION TO DISMISS UNJUST ENRICHMENT COUNTERCLAIM**

This action, which grew out of a landlord-tenant dispute, concerns whether the landlord's insurer must pay the judgment the tenant won against the landlord in the underlying lawsuit. After a trial in the Connecticut Superior Court on its claim that the landlord, Commerce Park Associates, LLC ("CPA"), had constructively evicted it from the property, the tenant, Robbins Eye Center P.C. ("REC"), won a substantial money judgment against CPA and sought payment of the judgment from CPA's liability insurer, Greater New York Mutual Insurance Company ("GNY"). GNY later brought this action seeking a declaratory judgment against REC, CPA, and others that there is no coverage under the policy for the state court judgment. ECF No. 1 ¶ 1. REC has brought counterclaims against GNY for breach of contract and unjust enrichment for GNY's failure to pay the judgment . *Id.* at 16-17. GNY now moves to dismiss REC's counterclaim for unjust enrichment. ECF No. 33. For the reasons set forth below, the motion to dismiss is GRANTED.

**I.      FACTUAL ALLEGATIONS**

1

The following factual allegations are drawn from REC's Answer and Amended Counterclaims, ECF No. 31, and are accepted as true for the purposes of this ruling. I also consider the undisputed factual allegations in GNY's Complaint to provide context for REC's counterclaims. ECF No. 1.

CPA owns commercial buildings located at 4675-4792 Main Street, Bridgeport, Connecticut, collectively known as Commerce Park, including 4695 Main Street, Bridgeport, Connecticut ("4695 Main"). ECF No. 31 ¶ 5. On August 1, 2007, Dr. Robbins, the sole shareholder of REC, entered into a fifteen-year lease with CPA for "the entire lower-level of 4695 Main" for the purpose of operating a "state-of-the-art opth[alm]ological practice, which included all aspects of vision care…." *Id.* ¶¶ 6-8. REC was not a party to the lease but was the "de facto tenant" and "spent $1,186,267 to fit-out" the leased space. *Id.* ¶¶ 2, 9-10.

At some point prior to April 2015, "Dr. Robbins abated rent pursuant to the terms of the 2007 lease," and CPA commenced an action in state court against Dr. Robbins "to recover unpaid rent." *Id.* ¶¶ 12-13. In April 2015, REC was constructively evicted from the leased space. *Id.* ¶¶ 11-12. Dr. Robbins commenced an action in state court in "September 2016 and sought to recover damages on behalf of REC arising from its constructive eviction from the Leased Space." *Id.* ¶ 14. Dr. Robbins' lawsuit claimed that a lack of maintenance and repairs by CPA and another entity had caused periodic sewage system backups in the rented space, making it untenantable. ECF No. 1 at ¶¶ 47-48. The unpaid rent and constructive eviction cases "were consolidated and tried to the Court over a seven-day period in July 2017…." after which, the trial court awarded damages to REC in the amount of $899,100. *Id.* ¶¶ 15, 19. On appeal, the appellate court "reduced the REC damages award to $741,847.32" and remanded "to the trial court with direction to enter judgment in REC's favor…." *Id.* ¶¶ 23-24. The judgment "includes

an award of post-judgment interest at the rate of eight percent (8%) per annum, which equates to $163.03 per day, running from February 2018, until the REC Judgment is satisfied." *Id.* ¶ 26. "No part of the REC Judgment has been satisfied." *Id.* ¶ 27.

GNY provided to CPA "a commercial general liability insurance policy" that covered the leased space between December 1, 2014 through December 1, 2015, the time during which the constructive eviction took place. *Id.* ¶¶ 28-30. The policy provided coverage for "Personal and Advertising injury, including wrongful eviction," as well as "Property Damage Liability." *Id.* ¶¶ 31-32. Connecticut's "Direct Action Statute" "permits a direct claim by REC against GNY [as a judgment creditor of CPA] and entitles REC to assert all rights of a named insured under the Policy." *Id.* ¶¶ 36, 44 *citing* C.G.S.A. § 38a-321. According to REC, "GNY is obligated by the terms of the Policy to satisfy the REC Judgment," but "has wrongfully refused to satisfy the REC Judgment," and "REC has been injured" by that refusal. *Id.* ¶¶ 38, 41, 42.

GNY brought an action "for a declaratory judgment that there is no coverage under the commercial general liability policies issued by GNY for the judgment entered." ECF No. 1 ¶ 1. According to GNY, there is no coverage because CPA failed to provide notice as required under the policies. Specifically, CPA failed to notify GNY of the occurrence, claim, or offense giving rise to the state actions and CPA failed to provide notice to GNY of the state court lawsuits. ECF No. 1 ¶ 2. GNY alleges that it was REC, not CPA, that notified GNY on June 22, 2018 of the judgment in the lawsuits, at which time REC sought payment of the judgment under a provision of the policy between CPA and GNY that states as follows: "A person or organization may sue us to recover on an agreed settlement or a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance." *Id.* ¶¶ 4, 8, 24. After REC informed GNY that it would

seek to collect the judgment, "GNY conducted an investigation to evaluate REC's claims and to determine whether the Judgment against CPA was covered under the Policies." *Id.* ¶ 46.  On "July 20, 2018, GNY, th[r]ough counsel, disclaimed coverage to REC for the Judgment against CPA" because CPA had breached the policy's notice provisions. *Id.* ¶¶ 55-56.  GNY seeks a declaratory judgment on ten counts, all of which would bar coverage under the policy and would preclude REC from recovering from GNY for the judgment against CPA. *Id.* at 19-20 ¶¶ (a)-(o).

In its Answer and Amended Counterclaims, REC asserts counterclaims against GNY for breach of contract and unjust enrichment. ECF No. 31 at 16-17.  GNY moves to dismiss REC's counterclaim for unjust enrichment under Rule 12(b)(6) of the Federal Rules of Civil Procedure on two grounds: (1) REC has failed to allege facts sufficient to state a plausible claim for unjust enrichment; and (2) the claim for unjust enrichment is precluded as a matter of law by the existence of an express contract between GNY and CPA, i.e., the policy.  After drawing all reasonable inferences from the counterclaims in favor of REC, I find that REC's unjust enrichment claim fails because the sole factual basis for the claim is the existence of the policy, and the terms of the policy preclude REC from plausibly alleging that GNY benefitted unjustly.

**II.     LEGAL STANDARD**

On a motion to dismiss under 12(b)(6), the Court must determine whether the non-moving party has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must accept as true the factual allegations in the complaint and

"draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims. . . ." *Scott v. Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 678) (brackets omitted).

### III. DISCUSSION

Unjust enrichment is a "broad and flexible remedy" by which a plaintiff can seek relief for a benefit that the defendant received unjustly and for which "no remedy is available by an action on the contract." *Hartford v. Conn. Res. Rec. Auth.*, 970 A.2d 592, 609 (Conn. 2009). The elements of an unjust enrichment claim are: "(1) that the defendant[] w[as] benefited, (2) that the defendant[] unjustly did not pay the plaintiff[] for the benefit, and (3) that the failure of payment was to the plaintiff[']s detriment." *Id.* (citation omitted). An express contract between the parties, however, precludes a claim for unjust enrichment covering the same subject matter as the contract. *Meaney v. Connecticut Hosp. Ass'n, Inc.*, 735 A.2d 813, 823 (Conn. 1999) ("It is often said that an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter.") (citation and internal quotation marks omitted), *see also Bagwell v. World Wrestling Entm't, Inc.*, No. 3:16-CV-1350 (JCH), 2017 WL 3579609, at *17 (D. Conn. May 5, 2017) ("Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment.") (citation and internal quotation marks omitted). While it is permissible to plead a breach of contract claim and an unjust enrichment claim in the alternative, *see* Fed. R. Civ. P. 8; *see also Standard Petroleum Co. v. Faugno Acquisition, LLC*, 191 A.3d

147, 161 (Conn. 2018) ("[I]t is permissible to allege alternative claims for breach of contract and unjust enrichment.") (citation omitted), an unjust enrichment claim that is inconsistent with the terms of an express contract is foreclosed. *Meaney*, 735 A.2d at 823-25 (no unjust enrichment claim to incentive pay where express contract governed employee's salary, benefits and other conditions of plaintiff's employment); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905-06 (2d Cir. 1997) (where employee signed agreement assigning his inventions to his employer, there was no unjust enrichment when employer failed to provide him additional compensation for his participation in development of new products: "[W]hile [the employer] may indeed have been enriched by [the employee's] efforts, we cannot say that such enrichment was unjust."); Restatement (First) of Restitution Sec. 107 (1937)("A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise has conferred a benefit upon him is not entitled to compensation therefor, other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain." (cited in *Meaney*, 735 A.2d at 823)).

     GNY argues that the unjust enrichment claim should be dismissed for failure to state a claim. According to GNY, REC "alleges nothing more than a recitation of the elements of unjust enrichment" and "does not allege a single fact" to suggest that GNY received a benefit or that GNY unjustly did not pay CPA for the benefit it received. ECF No. 33-1 at 7.

     There is something to GNY's argument, because the count setting forth the unjust enrichment claim studiously avoids incorporating any of the factual allegations in the Counterclaim regarding the policy. ECF No. 31 ¶ 43 (incorporating by reference only paragraphs

1-3 and 5-27 of the Counterclaim, which describes the policy in paragraphs 4 and 28-33).[1] And, as GNY notes, other than the policy, the Counterclaim discloses no basis for recognizing any duty owed by GNY to REC; the only factual connection between GNY and REC alleged anywhere in the Counterclaim is that REC is a judgment creditor of GNY's *insured*, CPA. ECF No. 33-1 at 9.[2] The Counterclaim identifies no other factual basis for GNY's alleged obligation to pay REC's judgment, which is the basis of the unjust enrichment claim. Specifically, REC alleges in the unjust enrichment claim that "[a]s a judgment creditor of CPA, REC may assert against GNY any claim that CPA has against GNY," "GNY received a benefit from CPA," "GNY's failure to pay CPA's defense costs benefitted GNY in the amount of the legal fees and costs that CPA incurred," "GNY's failure to pay the REC Judgment has further benefitted GNY in the amount of the REC Judgment," and "GNY's failure to pay CPA's defense costs and the REC Judgment is unjust." *Id.* ¶¶ 51, 52. Despite REC's failure to incorporate the factual allegations about the policy by reference, the allegations just recited are enough to create a reasonable inference that there was an insurance policy between CPA and GNY, because, as noted, in the absence of such a policy, these allegations would not make sense. For example, REC may, as a judgment creditor of CPA, "assert against GNY any claim that CPA has against GNY" only if GNY is CPA's insurer, Conn. Gen. Stat. Sec. 38a-321, and GNY's failure to pay

---

[1] In its opposition brief, REC states that its failure to incorporate paragraphs 28 and 31 of the Counterclaim, both of which refer to the policy, was inadvertent, and asks me to treat its unjust enrichment claim as if it alleges the existence of the policy. ECF No. 35 at 6 n.2.

[2] REC also invokes the Direct Action Statute, Conn. Gen. Stat. Sec. 38a-321 in its Counterclaim, but the applicability of that statute likewise depends on the existence of an insurance policy. Conn. Gen. Stat. Sec. 38a-321 ("Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.").

CPA's defense costs only benefited it if it is otherwise obligated to pay those costs under an insurance policy. REC alleges no facts, other than the existence of the insurance policy, to explain why REC may assert any claim against GNY, why CPA expected GNY to pay its litigation costs, or why REC expected GNY to satisfy the judgment.  Thus, ultimately, I disagree with GNY and find that there are sufficient facts in the unjust enrichment count, when reasonable inferences are drawn in favor of REC, to set forth a basis for an unjust enrichment claim.  The problem is not so much the absence of factual allegations but that the facts alleged demonstrate that the law forecloses an unjust enrichment claim here.

REC's factual allegations show that the insurance policy governs the subject matter of the dispute.  REC alleges that a final judgment entered against the insured, CPA, that CPA has failed to satisfy the judgment, and that REC can now assert CPA's claim against GNY as a judgment creditor. ECF No. 31 ¶¶ 24-27, 44.  This is consistent with the policy, which, as noted, provides that "[a] person or organization may sue us to recover on an agreed settlement or a final judgment against an insured."  ECF No. 1 ¶ 8.  Although REC is not a party to the policy, this provision likely makes it a third-party beneficiary.  *See, e.g., Stowe v. Smith*, 184 Conn. 194, 196 (1981) ("We have stated that a third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party.").  In any event, the policy is the "exclusive source of rights of the parties," *Meaney*, 735 A.2d at 822, because REC has not asserted any facts that suggest it is entitled to receive payment from GNY for any reason other than its status as a judgment creditor under the policy.. For example, REC has not alleged that an agreement existed outside the scope of the policy. *Maalouf v. Salomon Smith Barney, Inc.*, No. 02-CV-4770, 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (explaining that if dispute falls outside the scope of the existing contract, contract

claim would fail but plaintiff might still have unjust enrichment claim as an alternative remedy); see also *Norflet v. John Hancock Fin. Serv., Inc.*, 422 F. Supp. 2d 346, 356 (D. Conn. 2006) (permitting unjust enrichment claim because the plaintiffs did not allege a breach of life insurance contract but, rather, alleged "violation of their federal statutory right to race-neutral treatment in contracting and property ownership."). Nor has REC alleged that the policy is unenforceable but that the relationship between the parties nonetheless gave rise to an obligation to pay REC. *Compare Meaney*, 735 A.2d at 822 (explaining that plaintiff could not recover under unjust enrichment theory of liability because he had "not allege[d] that his employment contract with the defendants was in any respect unenforceable. Likewise, he [ha]d not allege[d] that he had performed services other than those contemplated by the contract."), *with NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-1023 (MPS), 2019 WL 1173019, at *15-16 (D. Conn. Mar. 13, 2019) (motion to dismiss unjust enrichment claim denied because defendant vehemently disputed the enforceability of the contract and unjust enrichment claim was plead in the alternative).

Since the factual allegations in the Counterclaim indicate that the policy is the exclusive source of the rights between the parties, REC cannot maintain an unjust enrichment claim that would afford it compensation when the policy would not. As noted, a provision of the policy allows REC to sue GNY as CPA's judgment creditor, but the same provision makes clear that GNY is required to pay such a judgment creditor only if it would have had to pay its insured in the same circumstances: "A person or organization may sue us to recover on an agreed settlement or a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance." ECF No. 1 ¶ 8. The policy also requires that the insured (CPA) provide notice in the

9

event of an occurrence, offense, claim, or suit. *Id.* ¶ 2.  If CPA fails to provide notice to GNY of a claim, then GNY is not liable under the policy, at least according to allegations of the complaint, which REC does not dispute for purposes of this motion.  ECF No. 1 at 12-13.

REC likewise does not dispute, for purposes of this motion, GNY's allegation that CPA failed to provide notice of the occurrence or claim in the underlying litigation.  Instead, REC argues that it would be an "unjust result" to preclude REC from recovering against GNY under the policy "solely due to CPA's conduct," i.e., its failure to give notice to GNY.  ECF No. 35 at 11.  This is so, REC asserts, because "if CPA had provided notice of REC's claim and lawsuit to GNY …, at a minimum GNY would have been required to fund some combination of CPA's defense costs through the years of complex litigation, a settlement on CPA's behalf, and/or [REC's state court judgment against CPA].  Equity should not permit GNY to enjoy this windfall while REC is left holding an empty bag." *Id.*   But the benefit GNY will receive if it does have to pay REC due to CPA's failure to give notice will not be a "windfall" or in any way unjust; it will simply be a benefit of the bargain reflected in the policy.  The policy language quoted in GNY's complaint suggests that a central purpose of the policy's notice provision is to enable the insurer to exercise some control over the defense of and settlement of a claim against the insured – thereby giving it the opportunity to reduce its costs.  ECF No. 1 ¶ 26 (quoting policy language requiring insured to give notice and cooperate in investigation of claim and defense of suit, and prohibiting insured from making any payment without consent of insurer).  Absent such a provision, GNY would likely have had to charge CPA a higher premium to cover the risk of increased expenses from claims against its insureds that proceeded to judgment without its knowledge or participation.  Enforcing the provision thus confers on GNY no greater benefit than what it contracted for in the policy (and what the Direct Action Statute, under which REC

would step into CPA's shoes, *see* note 2, *supra*, would provide for).  Indeed, a contrary result – one that imposed on GNY a loss that it had contracted to avoid and for which had not charged premium – would be unjust.  Because REC has alleged no extra-contractual basis for its unjust enrichment claim and because allowing that claim to proceeding would be inconsistent with the terms of the policy, I must dismiss the claim.

## IV.     CONCLUSION

For the foregoing reasons, GNY's motion to dismiss REC's unjust enrichment counterclaim is GRANTED.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut

December 14, 2020